And last matter on our calendar is Yehan Mir v. Robert Bogan and others, and Linda K. Whitney and others. Thank you. Good morning, Your Honor. Landon Rosay and Dr. Mir are here on my own behalf. Good morning. Thank you, Your Honor. Basically, Your Honor, this is a case where I was defrauded of a medical license in California, and then I was in a reciprocal proceeding. I was defrauded of my license in the state of New York. The only medical offense upon which the California Medical Board took action was of making one wrong diagnosis in June of the year 2000 when President Clinton was the president at that time, 16 years ago. But it was a serious wrong diagnosis, wasn't it? The patient lost her leg? No, not because of making a wrong diagnosis, Your Honor. We restored pulses after each surgery in that patient. The patient lost legs because they were period of ischemia. When there was no doctor who would come and assist and talk to the case, there were delays in surgeries. And that's what caused it. But that was not the issue. That was not the issue that patient lost leg. The issue was only making a wrong diagnosis in California. Well, and that ultimately led to originally your license was lifted, but then you were put on probation, and you violated the conditions of probation, and that's what led to the current loss of license, yes? That's right. But, Your Honor, the New York State, that actually is still pending an appeal. The medical misconduct in New York State is defined under New York education law 6530. And 6530 says under 3, subsection 3, that in order to be a medical misconduct in the state of New York, it has to be more than one instance of negligence of, say, making a wrong diagnosis. 2, subsection 5 provides it has to be more than one instance of incompetence in order to constitute as medical misconduct in the state of New York. Subsection 9B provides if somebody is found of professional misconduct in a different state, then that conduct should also be a misconduct in the state. And subsection C provides that if the appeal is pending on the underlying case, there's no misconduct, you know, until the appeal is resolved. Subsection D provides that if somebody is found of, is revoked in a foreign state, out of state, then whatever conduct he is revoked on should also be a misconduct in this state, in the state of New York. Now, under definition of 3 and 5, it cannot be, it cannot apply. B and D would not apply because under subsection 3 and D, it's only basically only one instance. It would not be a misconduct in the state of New York as long as it's only one instance, one count of negligence or incompetence of making wrong diagnosis. So there was no ground for a, there was no authority for prosecution because there was no misconduct to begin with. Dr. Mir, your time has expired. You've reserved two minutes for rebuttal. Did you see the red light? Yes, Your Honor. I see three minutes. Thank you. Okay. We'll hear from New York first. Ms. Lin, you're representing all the New York defendants. Thank you, Your Honor. May it please the court, Karen Lin for the New York defendants. Plaintiff Mir is a doctor who was disciplined by the California Medical Board after it found that he had engaged in acts of gross negligence and negligence. Pursuant to New York law, New York then commenced a referral proceeding against him, and at the conclusion of the proceeding, revoked Mir's New York license. Although Mir had numerous administrative and judicial remedies to challenge that determination, he did not pursue any of those. Instead, he brought this damages action against the agency officials who were involved in the proceeding and against a press officer who had no involvement. So he's not seeking reinstatement? He's only seeking damages? Correct, Your Honor. And for that reason, even if this court were to reach the merits of his procedural due process claim, there can be no violation because of the availability of the administrative and judicial avenues to challenge the determination. But as a threshold matter, as the district court correctly held, the officials who were allegedly involved in the referral proceeding are entitled to absolute immunity. Absolute immunity attaches to referral proceedings, just like this court found that it attaches to physician disciplinary proceedings in Applewhite v. Briber. Referral proceedings include procedural protections such as the right to be represented by counsel, the right to present evidence and to cross-examine witnesses, and a binding order by the board which articulates its findings and conclusions. Additionally, as I previously mentioned, the availability of administrative review and state court action under CPLR Article 78. Thus, absolute immunity should apply or should attach to referral proceedings, and the New York defendants involved are entitled to its protection because Muir's complaints are about New York defendants' initiation, prosecution, and adjudication of the charges against Muir, rules that are functionally comparable to those of a judge or prosecutor. Defendant Hutton was not integrally involved in the proceeding, but because she was not involved in any event that could give rise to a cognizable injury, no claim lies against her. In any event, any claim against her is untimely. Even if this court were to reach, as I previously mentioned, even if this court were to reach Muir's claims, none of his conclusory allegations are sufficient to state a claim for relief. And finally, the district court was well within its discretion to deny his motion for sanctions against the New York defendants' trial counsel. The motion to dismiss was plainly meritorious, was not brought in by the faith, and for that reason, denial of sanctions was appropriate. Did you hear Dr. Muir discuss a section of, I guess, New York law that would have saved him? Your Honor, there is no provision of New York law that would have saved him. I believe he's referring to Education Law Section 6539C. That does not apply here. The referral proceedings were not brought under 6539C. They were brought pursuant to 6539B and 9D, which do not have a provision for a pendency of an appeal. Those provisions relate to a finding of professional misconduct by another state's professional misconduct board, and any disciplinary action by the board. New York has an important interest in ensuring that physicians who have been found guilty of misconduct in another state cannot continue to practice in New York and expose its citizens to the risk of improper treatments. What process does the medical board go through when acting on a referral like this? What happens is that the director of the OPMC can direct that charges be brought, and then there's notice of a hearing to the physician. The physician can appear and present evidence, can be represented by counsel, and the board determines whether or not New York should impose any sort of discipline on the physician. So there can be cases where even if another state determines that the physician engaged in misconduct, New York will not impose discipline if the physician shows that there's reason that there should not be reciprocal. Basically a penalty proceeding because there is what effectively is collateral estoppel under the statute on the finding of misconduct. Is that a fair way of characterizing it? Yes, Your Honor. But I would just make one last point that although technically they can't re-litigate the finding of guilt in another state, they can bring in any sort of irregularities that happen in that disciplinary proceeding to argue that New York should not in fact impose any penalties. Unless this court has any questions, we ask that the dismissal of the claims against the New York defendants be affirmed. Thank you, counsel. And now from the California defendants. Please. Good morning. David Taglanti, California Deputy Attorney General. On behalf of the California appellees, Linda Whitney. Appellees. Kimberly. Yes. I'm sorry. I suggested that you were defendants. That's all right, Your Honor. Kimberly Kirchmeyer, Mary Agnes Matuszewski, and Sharon Levine. Dr. Muir does not talk about the conspiracy allegations. He's concerned here, as he probably should be, with regard to the action taken by the New York board. This case is not a conspiracy between the California appellees and the New York board. Interestingly, that's why Dr. Muir focuses his argument only on the idea that he was improperly revoked in New York. As far as the California appellees are concerned, they did nothing wrong. They didn't engage in a meeting of the minds. They didn't engage in an overt act in furtherance of an unconstitutional injury. They didn't violate RICO. And the essence of it is essentially that what he's trying to do, what he has done in his first amended complaint, is to paint a picture of conspiracy. But there's absolutely no such conspiracy. The actions that he's alleged the California appellees have taken don't amount to a conspiracy, don't amount to an overt act of unconstitutional injury. All they did was inform New York of their action. Is that correct? That's what they did. And they were obligated to do that, Your Honor, under the California Business and Professions Code, as well as federal law. So what they did as executive directors, president of the California Medical Board, is to simply follow the law, provide notice to a national data bank, provide notice to the other licensing agencies, in this case New York and Pennsylvania, that this is the action they took, nothing fraudulent about it, nothing false about it, simply a true recording of the situation in California and the action that they had taken. As far as the court's ruling relative to the motion to dismiss, we would act to be affirmed, simply because there is absolutely nothing alleged in the first amended complaint that rises to the level of conspiracy in any type of form, whether it be under Section 1983 or the RICO statute. But more importantly, Dr. Muir cannot amend the complaint to state such a cause of action. I note in this regard that the complaint, or the first amended complaint in this case, is quite lengthy, over 100 pages. It has in excess of 400 paragraphs. He has put everything that he possibly can into that pleading. There is nothing more that he can allege that would create a cause of action against my clients. Specifically, the district court found that the mailings and telephone calls that occurred, that are alleged, don't state a conspiracy. More importantly, as to the Deputy Attorney General who prosecuted the administrative action in California, Ms. Matuszewski, the only allegation as to her is nothing more than she asked a question at the administrative hearing to the effect that, what other states are you licensed in? How that rises to a conspiracy, one would be hard pressed to know. More importantly, the decisions that were sent by the Medical Board to New York and deposited in the National Data Bank, that doesn't rise to the level of conspiracy. So these aspects are basically all he can allege, and none qualify as a conspiracy. With that, I'll submit. Thanks. Thank you. Dr. Muir, you have two minutes for rebuttal. Yes, Your Honor. First of all, Your Honor, the district court granted immunity, absolute immunity, and the statutes provided here, there's a case law, Bernard v. County of Suffolk, which is in our brief, which says that when the statutes do not authorize any prosecution, the immunity doesn't apply. There's no absolute immunity. This is the case law from this court. And the birth factor don't come into play. As I stated previously, Your Honor, there is no justification for any prosecution in this state because there's no only medical offense of one single making wrong diagnosis. Even birth in the economy, the same thing happened. The United States Supreme Court said if there's a constitutional violation, if there's unauthorized prosecution, as they have done, there is no immunity. Furthermore, they say, oh, we are prosecutors, we have immunity. They say, no, they don't, because this court has decided, we have decided in a brief, in the University of New York, that there has to be a probable cause to begin with before you start prosecuting. There's no probable cause here, Your Honor, because the underlying matter is still pending. Your Honor, you said you violated probation. That issue is pending in the court in the U.S. District Court in San Diego. And he has attended some of the depositions on that. The U.S. District Court in San Diego is not a court that hears appeals from the California Medical Board. Your Honor, the appeal, there's an alternative. You can go to the California State Court. You can go to the U.S. District Court. No, you're suing, you filed a damage suit in San Diego in the federal court? No, it's conjunctive relief, Your Honor. Conjunctive relief. To get my license back there in the state of California. But where does it say that if something is final as far as the state is concerned, but someone has brought a civil rights case, that's different than an appeal, isn't it? Your Honor, it's a matter of technicality, but basically we are appealing a decision. We are asking the court to place me back, get my license back under conjunctive relief. Yes, but anyone can always do that. That's not the same thing as the decision is not final because it's still on appeal. It's administratively final, Your Honor, but not judicially. There are two ways here. You can go to the state court and you can go to the – and this issue was decided in the litigation in Southern California that I could go to the state court. As a matter of fact, there are a number of cases. There's a separate split on this, Your Honor, that some cases say you have to go exhaust everything in the state court. The other courts say, well, no, you can go to the federal court. And there is a court case now from this court, Second Circuit, which says that you can go to the federal court and have your license reinstated. So it's a case from Texas. So it is both ways. Appeal is pending. That decision is pending. There is no other appeal pending in the state court on that particular issue. So we've been fighting in two courts. It doesn't make any sense, Your Honor. But I'm asking for the same relief as to get my license back there. You didn't appeal the decision to take your license away in New York, did you? I'm sorry, Your Honor? You didn't appeal the decision. Your Honor, they did not give me the – it's a gross constitutional violation, Your Honor. They had the hearing without notice in the hearing. It's true you didn't appeal it, correct? Your Honor, I didn't know what the decision was. They never notified me within a time period about the result of the decision of the hearing committee. I could not go for Article 70 of the hearing. This is a complete job here, Your Honor, regarding conspiracy. You have to go back. I'm saying that there was no reason for them to take me, get an order now to practice medicine as of January of 2007. I had not committed a medical misconduct at that time. And for six years, I lost income. I had a contract with Smithtown Hospital as a trauma surgeon. I experienced experience. I was in Vietnam. I served there as a trauma surgeon 30 years in California. And they didn't have a trauma surgeon. They said, come and take it because our doctors want to sleep at night. You know, I lost about $2 million, $3 million a year income there. National Hospital has the same opportunity. I couldn't practice there. And without having done anything wrong, Your Honor, there was a false fraudulent charge of making the wrong diagnosis. And we have said in the complaint the facts, citing the record of the administrative record from the proceeding there. And then, Your Honor, besides that, it's a violation of the law, of Section New York Public Health Law 23012A, which says it concerns summary suspension. What they did was when they took that order from the law judge not to practice in New York, it was summary suspension. Summary suspension can only take place if there's imminent danger to health and life of an individual, Your Honor. It's evidence, Your Honor. We've read all your papers. You know that. And your time has expired. And we'll reserve decision. Thank you, Your Honor. Thank you. That concludes our calendar for today. So I'll ask the clerk to adjourn court. Court is adjourned.